IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                                    )
REBECCA BURLAGE,                    )
                                    )
          Plaintiff,                )
                                    )
v.                                  )        Civil Action No. 07-0352
                                    )
SUMMERVILLE SENIOR LIVING,          )
INCORPORATED, et al.,               )
                                    )
          Defendants.               )
                                    )
```

FILED
APR 1 8 2008
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Summary Judgment.

Plaintiff suffers from a myriad of physical ailments and has been confined to a wheelchair since her left leg was amputated in 1992. In June 2002, Plaintiff moved to the Defendant Summerville Senior Living facility in Prince William County, Virginia. Being in her early forties at the time she moved to Summerville, Plaintiff was one of the facility's younger and more active residents, requiring a relatively low level of care from the facility's employees. One of Plaintiff's medical conditions required her to bathe in a whirlpool "spa tub." Plaintiff complained multiple times to management that Summerville employees failed to clean the spa tub properly. In April 2005, Defendant Barbra Luken told Plaintiff that she was free to clean

the spa tub to her satisfaction and provided Plaintiff with disinfectant solution to clean the tub. After successfully cleaning the tub on multiple occasions, Plaintiff accidentally splashed herself in the face with disinfectant, causing her to fall and suffer additional skin contact to the disinfectant. Plaintiff suffered several serious chemical burns for which she was promptly treated at a nearby emergency room.

At the time Plaintiff came to Summerville, she was taking several medications. Some of these were psychotropic medications prescribed to treat depression and anxiety. Summerville's records from 2002 to 2005 indicate that Plaintiff was taking psychotropic medications. On May 13, 2005, Summerville, through executive director Defendant Angela Squadere, notified Plaintiff in writing that she needed to provide Summerville with a diagnosis and treatment plan relative to the psychotropic medications that she was taking. This request was made pursuant to 22 Va. Admin. Code § 40-71-150 (repealed 2006), which required that "[a]ssisted living facilities shall not admit or retain individuals . . . [taking] [p]sychotropic medications without appropriate diagnosis and treatment plans." Plaintiff did not provide Summerville with a treatment plan by May 24, 2005, the date required by the earlier letter.

On May 24, 2005, Summerville notified Plaintiff that it was terminating her residency and gave her fourteen days to vacate

2

the premises.  This notice required that Plaintiff have twenty-
four hour care to ensure that she did not injure herself and
indicated that Plaintiff would be required to pay for this care.
Summerville later told Plaintiff that Summerville would pay the
cost of the full-time care provider until Plaintiff found an
acceptable alternative.  Plaintiff chose to vacate the premises
immediately and by 1:00 a.m. on May 25, 2005, had removed all her
belongings.

In April, 2007, Plaintiff filed a twelve-count Complaint.
Counts I through IV seek recovery pursuant to the Fair Housing
Act, 42 U.S.C. § 3601 et seq.  Counts VI through VIII seek
recovery pursuant to Virginia landlord-tenant statutes.  Counts
IX, XI, and XII seek recovery for negligence, breach of contract,
and intentional infliction of emotional distress respectively.
Defendants move for summary judgment on all counts.  Plaintiff
has abandoned her claims for recovery in Counts V and X.

Summary judgment is appropriate where there is no genuine
issue as to any material fact.  See Fed. R. Civ. P. 56(c).  Once a
motion for summary judgment is properly made and supported, the
opposing party has the burden of showing that a genuine dispute
exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 586-87 (1986).  A material fact in dispute appears
when its existence or non-existence could lead a jury to
different outcomes.  See Anderson v. Liberty Lobby, Inc., 477

3

U.S. 242, 248 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. <u>See</u> <u>id.</u> Mere speculation by the non-moving party "cannot create a genuine issue of material fact." <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985); <u>see also</u> <u>Ash v. United Parcel Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. <u>See</u> <u>Smith v. Virginia Commonwealth Univ.</u>, 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

Plaintiff asserts four claims under the Fair Housing Act: (1) discrimination in the rental of housing, 42 U.S.C. § 3604(f)(1); (2) discrimination in the terms, conditions, or privileges of rental housing, 42 U.S.C. § 3604(f)(2); (3) discrimination by refusal to accommodate, 42 U.S.C. § 3604(f)(3); and (4) interference and intimidation, 42 U.S.C. § 3617. To survive summary judgment on the Fair Housing Act claims Plaintiff asserts, she has the initial burden of establishing a <u>prima</u> <u>facie</u> case of discrimination. Claims of discrimination under the Fair

4

Housing Act are analyzed under the McDonnell Douglas burden-shifting framework used to analyze claims for employment discrimination under Title VII of the Civil Rights Act of 1964. Pinchback v. Armistead Homes Corp., 907 F.2d 1447, 1451 (4th Cir. 1990)(McDonnell Douglas has become "a fundamental part" of fair housing law); see McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, the plaintiff must establish a prima facie case of discrimination, which the defendant may rebut by demonstrating legitimate non-discriminatory reasons for the actions taken. If the defendant so demonstrates, the plaintiff must present evidence that the non-discriminatory reasons are pretext for unlawful discrimination. See McDonnell Douglas, 411 U.S. at 802-805; Hadeed v. Abraham, 265 F. Supp. 2d 614, 623 (E.D. Va. 2003).

A plaintiff claiming discriminatory eviction under the Fair Housing Act establishes a prima facie case by showing that "a) [s]he was a member of a protected class under the FHA; b) defendants were aware of [her] membership in that class; c) [she] was willing and qualified to continue renting [her] apartment; and d) defendants refused to permit [her] to continue to rent the apartment." Radecki v. Joura, 114 F.3d 115, 116 (8th Cir. 1997). Plaintiff is unable to establish a prima facie case of discrimination for any of her Fair Housing Act claims because she was not qualified to continue renting her apartment. Summerville

notes that 22 Va. Admin. Code § 40-71-150 established that
"[a]ssisted living facilities shall not admit or retain
individuals . . . [taking] [p]sychotropic medications without
appropriate diagnosis and treatment plans." There is no dispute
that this regulation was in force during the relevant time and
applied to Summerville. Moreover, there is no dispute that
Plaintiff was taking psychotropic medications and failed to
provide Summerville with an appropriate diagnosis and treatment
plan.

Plaintiff argues that because Summerville was aware that
Plaintiff was taking psychotropic medications from the time she
began living at Summerville in 2002, its decision to evict her in
2005 on this basis "reeks of bad faith." However, Plaintiff only
has the opportunity to rebut Defendants' proffered non-
discriminatory reasons for eviction if Plaintiff can establish a
prima facie case. Because Defendants were legally prohibited
from retaining Plaintiff as a resident without her obtaining an
appropriate diagnosis and treatment plan, Plaintiff fails to
establish that she was qualified to live at Summerville.
Consequently, Plaintiff cannot survive summary judgment on any of
her Fair Housing Act claims.

Plaintiff's state law claims include one claim for statutory
ouster pursuant to Va. Code § 55-225.1-2 and two claims pursuant
to the Virginia Residential Landlord Tenant Act, Va. Code § 55-

6

248 et seq. Plaintiff's Landlord-Tenant Act claims are a claim
for unlawful eviction in violation of Va. Code § 55-248.26, and a
claim for retaliation in response to Plaintiff's complaints about
the condition of the premises in violation of Va. Code § 55-
248.39.

In her statutory ouster claim, Plaintiff contends that a
landlord may not unlawfully recover possession of a residential
dwelling by "(i) willful diminution of services to the tenant by
interrupting . . . electric, gas, water, or other essential
service . . . or (ii) refusal to permit the tenant access to the
unit unless such refusal is pursuant to the execution of a writ
of possession." Va. Code § 55-225.1. Section 55-225.2 states
that a tenant may recover possession, resumption of services,
damages, and reasonable attorney's fees for unlawful evictions as
described in § 55-225.1. Plaintiff's claim for unlawful eviction
under the Virginia Residential Landlord Tenant Act is based on
identical statutory language. See Va. Code § 55-248.26. Va.
Code § 55-248.39 states that:

> a landlord may not retaliate . . . by bringing or
> threatening to bring an action for possession or by
> causing a termination of the rental agreement pursuant to
> § 55-222 or § 55-248.37 after he has knowledge that: (1)
> the tenant has complained to a governmental agency
> charged with the responsibility for enforcement of a
> building or housing code of a violation applicable to the
> premises materially affective health or safety; or (ii)
> the tenant has made a complaint to or filed suit against
> the landlord for a violation of any provision of this
> chapter; or (iii) the tenant has organized or become a
> member of a tenants' organization; or (iv) the tenant has

7

testified in a court proceeding against the landlord.
Plaintiff's retaliation claim is based on her complaint to an
official at the Department of Social Services ("DSS") regarding
the condition of the spa tub.

The Virginia Residential Landlord and Tenant Act exempts
from coverage, "[r]esidence at a public or private institution,
if incidental to detention or the provision of medical,
geriatric, educational, counseling, religious, or similar
services." Va. Code § 55-248.5 A.1. The record indicates that
Summerville is an "assisted living facility," which is defined
under Virginia law as "any congregate residential setting that
provides or coordinates personal and healthcare services, 24 hour
supervision, and assistance . . . for the maintenance or care of
four or more adults who are aged, infirm, or disabled and who are
cared for in a primarily residential setting." Va. Code § 63.2-
100. "Maintenance or care means the protection, general
supervision and oversight of the physical and mental well-being
of an aged, infirm, or disabled individual." Id.

The fact that Summerville is an assisted living facility
under Virginia law combined with the facts in this case compel
the conclusion that Summerville is a facility where residence is
incidental to the provision of medical services. First,
Summerville provides the services codified in Virginia's
definition of "assisted living facility," such as coordination of

8

healthcare services and twenty-four hour supervision for more than four aged, infirm, or disabled adults.  Next, Summerville's pricing schedule shows that rental rates are determined by the level of care a particular resident will require.  If a resident requires a higher level of care, that resident's rent will be higher.  Given that the price associated with residency is largely associated with the level of care a resident requires, it is clear that residence at Summerville is incidental to the provision of medical care.  Finally, the standard rental agreement states that if a resident is absent from the Summerville facility for more than three consecutive days, Summerville will credit the resident's account for the level of care services applicable to each day after the third day of absence.  This similarly indicates that the provision of medical care is the key element in residence at Summerville. Consequently, the Virginia Residential Landlord Tenant Act does not apply to Plaintiff's residence at Summerville.

Even if the Act were to apply, Plaintiff was not unlawfully evicted or retaliated against.  Liability under the Virginia Residential Landlord Tenant Act attaches only to unlawful evictions.  In this case, Plaintiff was evicted pursuant to a Virginia regulation that forbade residence at assisted living facilities by individuals taking psychotropic medications without appropriate treatment plans.  See 22 Va. Admin. Code § 40-71-150.

Plaintiff's claim that she was retaliated against for complaining to DSS about the condition of the spa tub fails for the same reason.  Plaintiff's complaint to DSS was made on May 18, 2005, five days after she was informed that she would be evicted if she did not provide Summerville with an appropriate treatment plan for her use of psychotropic medications.  Consequently, Summerville could not have retaliated against Plaintiff for her complaint to DSS when it had previously told Plaintiff that she would be evicted for failing to present an appropriate treatment plan for her psychotropic medication use.

The statutory exception to the Virginia Residential Landlord Tenant Act for residence that is incidental to the provision of medical care does not apply to Plaintiff's claim for statutory ouster under Va. Code § 55-225.1-2.  However, like Plaintiff's claim for unlawful eviction under the Landlord Tenant Act, Plaintiff's statutory ouster claim rests on a showing that Plaintiff was unlawfully evicted.  Because Plaintiff was evicted in order for Summerville to be in compliance with Virginia administrative regulations, Plaintiff's eviction was not unlawful.  Consequently, her claim for statutory ouster must also fail.

To prove negligence, "there must be a legal duty, a breach thereof, and a consequent injury which could have been reasonably foreseen by the exercise of reasonable care and prudence."

10

Jordan v. Jordan, 220 Va. 160, 162 (1979)(internal citations omitted). "Negligence cannot be presumed from the mere happening of an accident and the burden is on the plaintiff who alleges negligence to present evidence of preponderant weight from which a jury can find that the defendant's negligence was the proximate cause of the accident." Id. When reasonable men cannot disagree on the facts and the inferences drawn therefrom, negligence becomes an issue of law for the court to decide. Id. Plaintiff argues that Summerville was negligent in failing to keep the spa tub clean, directing Plaintiff to clean the tub herself, providing her with caustic cleaning materials, and failing to giver her instructions on how to use them, which proximately caused the physical injuries she sustained during her fall in the spa tub. In Virginia, "it is well established that a person is responsible for injuries caused by his or her negligence, even if the acts of others contributed to the injuries, unless those acts create an intervening or superceding cause of the injury." Hickman v. Lab. Corp. of America Holdings, Inc., 460 F. Supp. 2d 693, 701 (W.D. Va. 2006)(citing Coleman v. Blankenship Oil Corp., 221 Va. 124, 130 (1980)); Von Roy v. Whitescarver, 197 Va. 384, 393 (1955). "[A] superceding cause of an injury constitutes a new effective cause and operates independently of any other act, making it, and it only, the proximate cause of injury." Id. (internal quotations omitted).

11

Plaintiff argues that Defendants' negligence caused her
injuries and that Plaintiff's own actions do not constitute a
superceding cause of that injury.  On the contrary, the facts
clearly indicate that Plaintiff is responsible for engaging in
the chain of events that brought about her injuries and that
Defendants' actions do not constitute a superceding cause that
leads to liability.  Plaintiff chose to complain repeatedly about
the condition of the spa tub.  There is no evidence that any
other Summerville resident found the condition of the spa tub
unsatisfactory.  Plaintiff was not forced to clean the tub
herself and there is evidence that Plaintiff's efforts to clean
the tub were supplemental to the ordinary cleaning efforts by
Summerville staff.  That Defendants did not prevent Plaintiff
from cleaning the tub or even facilitated her efforts does not
constitute a new effective cause of Plaintiff's injuries that
operates independently of her own acts.  Moreover, Plaintiff
successfully cleaned the tub on several occasions without
sustaining injury.  Consequently, it is clear that Plaintiff's
own actions were the proximate cause of her injuries.
Defendants' decision to allow Plaintiff to clean the tub herself
does not constitute a new effective cause that operates
independently of Plaintiff's own actions.

Even if Plaintiff could show that Defendants' failure to
prevent Plaintiff from cleaning the spa tub was the proximate

cause of her injuries, the facts further show that Plaintiff was contributorily negligent. "Contributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for [her] own safety under the circumstances." Estate of Moses ex rel. Moses v. Southwestern Va. Transit Mgmt. Co., 273 Va. 672, 678 (2007)(internal citations omitted). To show contributory negligence, a defendant must show that the plaintiff was negligent and that this "negligence was a proximate cause, a direct, efficient contributing cause of the accident." Id. at 678-79 (internal citations omitted). Where the defendant is able to establish contributory negligence, the plaintiff is barred from recovery. Id. When reasonable men cannot differ on the facts and inferences drawn therefrom, contributory negligence is an issue of law for the court to decide. Jordan, 220 Va. at 162.

Plaintiff elected not to ask anyone in the housekeeping department how to clean the tub. Plaintiff admitted that she did not review the instructions and warnings on the cleaning solution bottle and figured she would "wing it." Moreover, there is no evidence that any member of Summerville's staff was injured using cleaning solution at issue. Indeed, Plaintiff successfully cleaned the tub multiple times without sustaining injury or complaining to Summerville staff that she felt it was unsafe for

13

her to do so. Consequently the evidence clearly demonstrates that Plaintiff's own actions were negligent and that those actions caused the injuries she sustained while cleaning the spa tub.

Even if Plaintiff's own actions did not cause her injuries and she was not contributorily negligent, the evidence shows that Plaintiff assumed the risk of injury associated with cleaning the spa tub. In Virginia, "voluntary assumption of the risk of injury operates as a complete bar to recovery for defendant's alleged negligence in causing that injury." Thurmond v. Prince William Prof'l Baseball Club, 265 Va. 59, 64 (2003)(internal citations omitted). Considering the assumption of risk defense "requires the use of a subjective standard, which addresses whether a particular plaintiff fully understood the nature and extent of a known danger and voluntarily exposed herself to that danger." Id. (internal citations omitted). In order to grant summary judgment, reasonable minds cannot differ on whether Plaintiff voluntarily assumed the risk associated with cleaning the spa tub. Id. Plaintiff was a formerly licensed registered nurse. She knew that there were directions and a warning label on the bottle of cleaning solution. She chose to "wing it" rather than ask Summerville employees about how to clean the tub. Moreover, in 2003, Plaintiff told a Summerville employee that a bottle of cleaning solution had been left in the spa tub and was

14

concerned that someone might mistakenly use the chemical solution in his or her bath. Consequently, the evidence demonstrates that Plaintiff understood and appreciated the risk posed by the cleaning solution and voluntarily exposed herself to it.

Plaintiff alleges in Count XI that Summerville breached its Resident Agreement with Plaintiff by failing to enforce it in good faith. The Agreement provides that "[i]n accordance with applicable law, Summerville may, without prior written notice, transfer or discharge [Plaintiff] from the Facility for health or safety reasons or if a delay in discharge or transfer would jeopardize the health or safety of [Plaintiff] or others in the Facility." The evidence demonstrates that Plaintiff was evicted pursuant to a Virginia health and safety regulation, which is a reason for eviction specifically allowed by the Agreement. Consequently, there is no evidence that the Agreement was enforced in bad faith.

Plaintiff claims that Defendant committed intentional infliction of emotional distress by labeling Plaintiff's complaints about facility health and safety violations as socially inappropriate and disruptive behavior, allowing her to clean the spa tub, and evicting her on short notice. To establish a claim for intentional infliction of emotional distress in Virginia, Plaintiff must show that: (1) Defendants' conduct was intentional or reckless; (2) the conduct was

15

outrageous and intolerable in that it offends generally accepted standards of decency and morality; (3) there is a causal connection between the conduct and the emotional distress; (4) the emotional distress is severe.  <u>Womack v. Eldridge</u>, 215 Va. 338, 342 (1974).  The evidence clearly demonstrates that Defendants' conduct was not so outrageous that it offended generally accepted standards of decency and morality.  Labeling Plaintiff's complaints regarding the condition of the spa tub as socially inappropriate might have been excessive, but it is certainly not offensive.  Responding to those complaints by allowing Plaintiff to clean the spa tub does not constitute outrageous behavior either.  Finally, Defendants were prohibited by Virginia regulations from retaining Plaintiff as a resident without an appropriate treatment plan for her use of psychotropic medications.  Consequently, evicting her for failing to provide such a plan cannot be outrageous or socially inappropriate as a matter of law.

        The court may, in its discretion, award prevailing defendants in Fair Housing Act cases attorney's fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  <u>Bryant Woods Inn, Inc. v. Howard County</u>, 124 F.3d 597, 606 (4th Cir. 1997)(quoting <u>Christianburg Garment Co. v. FEOC</u>, 434 U.S. 412, 417 (1978)).  Defendants base their request for

attorney's fees on a forged document produced by Plaintiff during discovery.  After Summerville requested that Plaintiff provide it with a pyschotropic medication treatment plan but prior to her eviction, Plaintiff visited her internist, Dr. Sohail Moussavi. Plaintiff intended to have Dr. Moussavi sign a mental health form setting out a treatment plan for her use of such medication. Although Dr. Moussavi is an internist and would not have been qualified to undertake a mental health assessment, Plaintiff and Dr. Moussavi discussed the various medical forms required of Plaintiff by Summerville.

Upon returning to Summerville from her appointment with Dr. Moussavi, Plaintiff realized that Dr. Moussavi had not signed Plaintiff's mental health form.  Fraught with worry over her impending eviction, Plaintiff forged Dr. Moussavi's signature on her mental health form.  Plaintiff's lapse in judgment proved to be momentary, however, as she chose not to submit the forged document to Summerville and accepted her eviction.  The forged form did remain in Plaintiff's files and was included with the documents Plaintiff gave her counsel to prepare for the instant lawsuit.  Summerville was not aware of the forged document until it was produced in discovery.

While Plaintiff's decision to falsify Dr. Moussavi's signature was a grave error, attorney's fees are not warranted in this case.  That Plaintiff committed said error does not mean

17

that Plaintiff's Fair Housing Act claims were frivolous, unreasonable, or without foundation.  The basis for Plaintiff's Fair Housing Act claims is that Defendants' decision to evict her for failing to provide a treatment plan for her use of psychotropic medications was pretext for unlawful discrimination. Plaintiff felt that her relationship with new management at Summerville had deteriorated to the point where she felt the new management was looking for a way to evict her.  Plaintiff's claim that Defendants' stated reasons for evicting her were pretext for discrimination would have been stronger had Defendants possessed a mental health form setting out a plan for her use of medication.  That Defendants never possessed such a form does not make Plaintiff's Fair Housing Act claims frivolous or unreasonable.  Moreover, Plaintiff's financial condition limits her ability to pay Defendants' attorney's fees.

For the reasons stated above, Defendants are entitled to summary judgment and shall not be awarded attorney's fees.

An appropriate order shall issue.

_____/s/_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April _19_, 2008

18